**NATIONAL LAWYERS GUILD,**
Appellant,

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.**

No. 12495.

United States Court of Appeals
District of Columbia Circuit.

Argued April 4, 1955.

Decided July 14, 1955.

Petition for Rehearing In Banc Denied
Oct. 4, 1955.

Mr. Osmond K. Fraenkel, New York City, with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for appellant.

Mr. Benjamin Forman, Special Asst. to the Atty. Gen., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. Leo A. Rover, U. S. Atty., and Mr. Samuel D. Slade, Atty., Dept. of Justice, were on the brief, for appellee. Mr. Paul A. Sweeney, Atty., Dept. of Justice, also entered an appearance for appellee.

Before PRETTYMAN, WILBUR K. MILLER, and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant is a national bar association which has been in existence since February, 1937. On August 28, 1953, it received a letter from the Attorney General of the United States, stating that he proposed to designate it as an organization coming within the purview of Executive Order 10450.[1] The Guild filed

1. 3 C.F.R. 72 (Supp.1953), providing in pertinent part: "Sec. 12. * * * the Department of Justice shall continue to furnish the information described in par-

formal notice that it desired to contest the proposal,[2] and the Attorney General sent the Guild a statement of the grounds upon which the designation was proposed. The statement was accompanied by sixty-six interrogatories to be answered by the Guild.[3] The Guild then filed in the District Court a complaint for injunctive relief. It prayed judgment declaring that Executive Orders 9835 and 10450 are unconstitutional and void, the procedures adopted by the Attorney General under those orders are unconstitutional, and the Attorney General is disqualified to rule in this case by reason of prejudgment of the issues. It further prayed for an order enjoining the Attorney General from designating it under Executive Order 10450.

Having filed its complaint the Guild moved for preliminary injunction and filed affidavits in support of its motion. Attached to one of the affidavits were copies of the interrogatories served by the Attorney General. The District Court, after hearing, made findings of fact and conclusions of law and denied the preliminary injunction. The Guild appealed to this court, and we reversed the order of the District Court, remanding the case with directions that an order be entered holding in abeyance the administrative proceeding pending the judgment of the District Court upon the merits of the issues posed in the action.[4] Thereupon the Attorney General filed in the District Court an answer and a supplemental answer to the complaint, with exhibits attached to each answer. He then filed a motion for judgment on the

pleadings or, in the alternative, for summary judgment. The Guild filed a long affidavit in opposition. The District Court heard the motion, filed a memorandum opinion,[5] made findings of fact and conclusions of law, and granted summary judgment for the defendant. The present appeal by the Guild followed.

■■■ The first point presented by the appeal is whether the issue of exhaustion of administrative remedies was open for consideration by the District Court, in view of the opinion, decision and order of this court upon the first appeal. We think that issue was plainly open for consideration; it was one of the merits posed by the pleadings in the action. A motion for a preliminary injunction requires the court to determine whether there are substantial questions and whether there would be irreparable injury to one party or the other, and to balance the equities between the parties. Those, and those only, were the considerations upon which this court acted in its review of the denial of the preliminary injunction. By his subsequent pleadings the Attorney General posed as a basic issue that the Guild must exhaust its administrative remedy before obtaining judicial review. Thus that issue became one upon the merits of the prayer for permanent injunctive relief. As such, it was open for consideration upon the motion for summary judgment.

The second question upon this appeal is whether the District Court erred in ruling that the Guild must exhaust the administrative remedy provided by the Attorney General's rules of procedure.

agraph 3 of Part III of the said Executive Order No. 9835, but directly to the head of each department and agency." Paragraph 3 of Part III of Executive Order No. 9835, 3 C.F.R. 129, 131 (Supp. 1947), provides: "The Loyalty Review Board shall currently be furnished by the Department of Justice the name of each foreign or domestic organization, association, movement, group or combination of persons which the Attorney General, after appropriate investigation and determination, designates as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or ap-

proving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of government of the United States by unconstitutional means."

2. Pursuant to 28 C.F.R. § 41.1(b) (1954).

3. Pursuant to 28 C.F.R. § 41.2 (1954).

4. National Lawyers Guild v. Brownell, 1954, 94 U.S.App.D.C. 128, 215 F.2d 485.

5. National Lawyers Guild v. Brownell, D. C.D.C.1954, 126 F.Supp. 730.

The Guild says it is not required to do so and assigns a number of reasons. These reasons are that the Attorney General has prejudged the matter, no statute authorized the procedure, there is no constitutional basis for the executive action, irreparable injury would ensue from pursuing the remedy, the procedure violates the requirements of due process, and the Executive Order (No. 10450) is void for lack of definite standards.

The Guild says the District Court erred in its ruling upon the allegation of prejudgment. It was shown by affidavit that, on August 27, 1953, coincident with the notice sent the Guild, the Attorney General delivered an address before the American Bar Association in Boston, in which he made strong statements as to his reasons for proposing to designate the Guild, and he delivered another similar address at Indianapolis on September 5, 1953. The extract from the Boston address which was filed as an exhibit concludes with the following sentence: "It is because the evidence shows that the National Lawyers Guild is at present a Communist dominated and controlled organization fully committed to the Communist Party line that I have today served notice to it to show cause why it should not be designated on the Attorney General's list of subversive organizations." Similarly positive statements appear elsewhere in the extract from the address.

The applicable rules of procedure,[6] promulgated by the Attorney General pursuant to Executive Order 10450, provide that an "appropriate investigation" must precede a proposal to designate an organization as within the purview of the Order; that, if he proposes to designate, the Attorney General must send a formal notice and, if a contest is filed, he must send a written statement of grounds. If no contest is filed the proposal ripens into a determination. Thus it is required that the initial proposal to designate be after investigation and upon grounds; in other words, it must not be a mere opening move without substance. While one might question the propriety of the vigorous statements made publicly by the Attorney General in the case at bar, at the same time it should be recognized that he may well have felt that "a decent Respect to the Opinions of Mankind" required him to disclose personally at the bar of public opinion the reasons for proposing the designation of a national bar association. The proposal to designate such an organization was a unique and serious step, not to be taken lightly. We have in this record an affidavit of the Attorney General, vigorously denying his prejudgment and explaining that the only determination thus far made by him is that the evidence warranted his proposal to designate, a preliminary and *ex parte* determination. He reaffirms under oath his intention "to make an impartial final determination on the basis of the administrative record before me".

We cannot assume in advance of a hearing that a responsible executive official of the Government will fail to carry out his manifest duty. Our conclusion on the point is that the plaintiffs must await the event rather than attempt to anticipate it.

It is to be noted that in Marcello,[7] Accardi,[8] and Cement Institute[9] the Supreme Court treated the developments at the administrative hearings as determinative of the issue of claimed prejudgment. Implicit in that treatment is the thought that decision upon alleged prejudgment must await the presentment of proof of effect.

The appellant Guild next says that it is not required to exhaust the ad-

---

6. 28 C.F.R. § 41.1 et seq. (1954); and see Joint Anti-Fascist Refugee Committee v. Brownell, 1954, 94 U.S.App.D.C. 341, 215 F.2d 870.

7. Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757.

8. Shaughnessy v. U. S. ex rel. Accardi, 1955, 349 U.S. 280, 75 S.Ct. 746.

9. Federal Trade Comm'n v. Cement Institute, 1948, 333 U.S. 683, 701, 68 S.Ct. 793, 92 L.Ed. 1010.

ministrative remedy set up by the regulations, since the administrative listing of organizations has not been validly authorized. It says the President lacked power to authorize the listing and the standards contained in the Executive Order are so vague that they violate the requirements of due process. It rests its contention upon the opinion in Allen v. Grand Cent. Aircraft Co.[10]

In view of the opinions in the Supreme Court in Joint Anti-Fascist Refugee Committee v. McGrath,[11] we think it is not now open for this court to hold that the procedure now provided by the Attorney General, including hearing and a finding upon an open record, need not be pursued. The several opinions of the Justices must be examined, no opinion for the Court having been announced. Mr. Justice Frankfurter and Mr. Justice Jackson stated their views that the listings of the petitioners were invalid for lack of procedural due process. Clearly, therefore, so far as those two Justices were concerned, had such process been proffered in an administrative procedure, the rule that administrative remedies must be exhausted would have applied. And implicit in their opinions is the premise that the listings were not invalid for total lack of power in the President and the Attorney General. The three dissenting Justices, for whom Mr. Justice Reed wrote, were of opinion that the listings were valid upon the facts alleged in the complaint. So it is clear that they thought the listings were not invalid for total lack of power. Moreover these Justices reached their conclusion that due process had not been violated from the premise that no protected right was invaded by the listings. However, if we substitute for that premise the proposition established by the majority of the Court (i. e., that a right had been invaded), it would seem

clear that these three Justices would have concluded that procedural due process was necessary. Such a conclusion, as we have just said, carries with it the rule that administrative remedies must be exhausted. Mr. Justice Burton, writing for himself and Mr. Justice Douglas, was of opinion that the Attorney General's designation of the petitioners was arbitrary in the absence of supporting factual data. He footnoted the lack of hearing. If the administrative procedure there involved had provided a forum for the spreading of the facts upon an open record and a determination of the issues upon that record, it seems to us these Justices would necessarily have held that a court could not step in until that procedure had been pursued. If a revelation of the facts and a decision thereon had been provided, they would not have held that organizations proposed for listing could stop the action by avoiding the established procedure.

When the Joint Anti-Fascist case was before this court we had held flatly that the Executive Order was valid[12] and that it authorized the listing. If the Supreme Court had been of opinion that the Attorney General has no power whatever to designate organizations under the Executive Order, it seems to us the issue of a factual basis for a listing would have been immaterial and that the Court would necessarily have said so. Instead it remanded for such a factual determination.

The regulations[13] involved in the case now at bar provide for notice, hearings, and a determination upon the record,[14] except for classified security information. Since the Supreme Court had this problem before it and notably did not hold the Executive Order and any procedure under it invalid, we think the effect of its decision upon the problem now before us is that a prescribed pro-

10. 1954, 347 U.S. 535, 74 S.Ct. 745, 98 L. Ed. 933.

11. 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L. Ed. 817.

12. Joint Anti-Fascist Refugee Committee v. Clark, 1949, 85 U.S.App.D.C. 255, 260, 177 F.2d 79, 84.

13. Supra note 6.

14. 28 C.F.R. § 41.10 (1954).

cedure which provides hearing, etc., must be pursued, a rule which, as we shall see in a moment, applies even in the face of alleged invalidity.

That a claim of constitutional invalidity does not negative the requirement for exhaustion of remedies is made amply clear by the summary reversal by the Supreme Court in Franklin v. Jonco Aircraft Corp.[15] for the stated reason that the appellee had failed to exhaust its administrative remedy. The appellee had claimed the authorizing act to be unconstitutional.[16] Allen v. Grand Cent. Aircraft Co., supra, is to the same effect.[17]

The Guild says the rules of procedure are fatally defective in a number of concrete respects. But the rules do provide the features of hearing, etc., we have described, and so we think they meet the basic tests which are sufficient premise for a requirement that the remedy be exhausted. Some features of the rules do give pause. Such, for example, are the provisions eliminating, in the discretion of the hearing officer, oral testimony, with its concomitant cross examination, and accepting affidavits in lieu thereof; the provision that the hearing officer may dispense with the taking of evidence; and the provision that an "evasive" reply to an interrogatory "shall" be deemed an admission of the facts to which the interrogatory "refers". But we think answers to the problems posed by such provisions must await a case in which they have been applied. We cannot guess in advance the details of a proceeding to be held, when the rules of procedure permit a valid proceeding.

The Guild argues that the Attorney General's rules of procedure would permit a proceeding which would vary in several important respects from provisions of the Administrative Procedure Act.[18] Without deciding whether that Act does or does not apply, we point out that the rules of procedure also permit a proceeding which would comply in all respects with that Act. On this point, as on the prior one, it is enough for us to say we cannot now speculate as to the nature of the proceeding which may occur, or now hold invalid any and all proceedings on account of the possibilities. The Guild cites Wong Yang Sung v. McGrath,[19] but that case does not negate the position we have just indicated. Moreover we think the Supreme Court did not there mean that an Administrative Procedure Act hearing is the only means of satisfying the requirements of due process.[20]

The Guild says the proffered administrative remedy need not be exhausted, because no statute authorized the proceeding. Without elaborating the point we merely say that the opinion of the Supreme Court in Allen v. Grand Cent. Aircraft Co., supra, conclusively establishes that administrative remedies validly established by regulation must be exhausted.

The Guild says it will be irreparably damaged both by the proceeding upon the proposed designation, regardless of the final result after the hearing, and by a final designation. But much of the damage had already been suffered by the Guild before the complaint was filed, and any action by the District Court on the complaint would have been too late to prevent it. Moreover we doubt that the Guild suffered or will suffer proportionately greater damage than any organization placed on that list

---

15. 1953, 346 U.S. 868, 74 S.Ct. 126, 98 L. Ed. 378.

16. Jonco Aircraft Corp. v. Franklin, D.C. N.D.Tex.1953, 114 F.Supp. 392, 394.

17. See also National Enforcement Commission v. Olson, 1955, 95 U.S.App.D.C. ———, 221 F.2d 92.

18. 60 Stat. 237 (1946), as amended, 5 U.S. C.A. § 1001 et seq.

19. 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L. Ed. 616.

20. See Marcello v. Bonds, supra, and the same case in the Court of Appeals, Marcello v. Ahrens, 5 Cir., 1954, 212 F.2d 830.

would suffer, and the opinions in Joint Anti-Fascist, supra, preclude our holding that such damage offsets the normal requirement that the administrative remedy must be exhausted. The Court there described the damage threatened but notably did not say this precluded the necessity for undergoing a hearing afforded.

 The Guild also attacks the interrogatories submitted to it. Some further revision of these questions is probably in order. For example, some of the amended questions appear to be extremely difficult, if not impossible, of answer. The Guild says it had at times some thirty chapters and several thousand members, many of whom no longer belong to it. A few of the interrogatories are: No. 60, "To your knowledge [21] has * * * any * * * chapter of the NLG ever permitted the use of its mailing list to any other organization?" No. 64, "Has the NLG or any of the * * * chapters thereof, passed an anti-Communist or anti-Soviet Union resolution since 1946?" No. 49, "* * * have you reason to believe that any of the * * * past members of any * * * chapter of the N LG * * * ever has been [a] * * * member of the CP [Communist Party] * * * ?" "If so, identify each of them * * *." No. 50, "* * * have you reason to believe that * * * any * * * chapter * * * ever furnished information to the 'Daily Worker' * * * on any occasion when such information was not likewise furnished to other newspapers or news services?" The foregoing are by way of example only. We do not intend a critical analysis. We think the proper place to test these interrogatories in the first instance is before the administrative body. We cannot anticipate the administrative action, if such a step were taken, any more than we can anticipate the outcome of the proceeding itself. Some modifications have already been made, and we cannot now say that others will not be made if specific application is made.

We are of opinion that the Guild must exhaust the proffered administrative remedy. For that reason the judgment of the District Court is

Affirmed.

---

21. These questions are addressed to an unincorporated association.