Horace T. WARD, Plaintiff,

v.

REGENTS OF the UNIVERSITY SYSTEM OF GEORGIA et al., Defendants.

Civ. A. No. 4355.

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 12, 1957.

A. T. Walden, Atlanta, Ga., Thurgood Marshall, Robert L. Carter, New York City, D. L. Hollowell, Atlanta, Ga., for plaintiff.

Eugene Cook, Atty. Gen., of Georgia, Charles H. Bruce, G. Arthur Howell, and B. D. Murphy, Atlanta, Ga., for defendants.

HOOPER, Chief Judge.

■ (1) It is now well established that the authorities in control of the operation of any state-supported law school in this country may not refuse admission to any person solely on account of race and color. In all of the decided cases, however, so far as this Court is aware, the decision was either a class action or the qualifications of the applicant were admitted, or had been judicially determined.

This is not a class action but it involves the individual application of the plaintiff, a Negro citizen, which was filed in September, 1950 for admission to the Law School in June, 1951. Having been denied admission he carried his administrative appeal through the various steps pursuant to existing regulations and was ultimately denied upon the ground that he was not qualified as to attitude and character.

While his application was filed in September, 1950 the case did not come on for final trial until December 17, 1956. During this interval of time, some six and one-half years, the plaintiff had consistently failed and refused to file any new application which would give to the Board of Regents sufficient information on which to base a decision as to his qualifications as of the next term, which would have been September, 1957. Without such information the Board of Regents could not pass upon his qualifications to enter in September, 1957, consequently they did not act thereon, and as a consequence there is no action by the Board of Regents for this Court to review.

The case therefore turns upon well-recognized principles of law governing the relationship of the Federal government to the states, and of the jurisdiction of Federal courts to review the actions of administrative bodies of the individual states.

■ It is hornbook law that the authorities in control of the operation of a state-supported law school are charged with the primary responsibility of passing upon the qualifications for admission to the same and must in the first instance pass upon such applications fairly and without discrimination, before the Courts will interfere.

"Somebody must enroll the pupils in the schools. They cannot enroll themselves; and we can think of no one better qualified to undertake the

task than the officials of the schools and the school boards having the schools in charge. * * * Not until they have been applied to and have failed to give relief should the courts be asked to interfere in school administration." Language by Judge Parker in Carson v. Warlick, 4 Cir., 238 F.2d 724, at page 728.

The above principles have been applied in a number of cases decided by the Court of Appeals of the Fifth Judicial Circuit. In Peay, et al. v. Cox, 190 F.2d 123, the District Court dismissed a complaint charging that state officials in charge of an election were discriminating against colored voters and on appeal it was held that the plaintiff must exhaust administrative remedy as provided by state laws, the Court stating:

> " * * * that the remedy by injunction, which is a discretionary remedy even when the court has jurisdiction to grant it, ought not to be had to control the State officer in the conduct of his office even though his conduct may appear to be wrong, until the remedy to correct him provided by the State has been exhausted. This rule is of special importance between the federal courts and State functionaries." See page 125.

The Court gave direction that the action remain pending in the District Court "for a reasonable time to permit the exhaustion of state administrative remedies."

Similar rulings were made by the same court in Cook et al. v. Davis, 178 F.2d 595 and Bates et al. v. Batte, 187 F.2d 142. See also Galfas v. City of Atlanta, 5 Cir., 193 F.2d 931.

The same principle has repeatedly been upheld by the United States Supreme Court, see Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, and cases therein cited.

 (2) Where school authorities have been guilty of discrimination and such discrimination has affected their decision in denying admission to the school, it is the duty of the trial judge to declare such discrimination to exist, to send the matter back to the authorities for further consideration, and to enjoin future discrimination. Where, however, a plaintiff made application in September, 1950 which was denied, subsequently pursued his administrative appeal, was inducted into military service for two years, and upon his release was requested by the school authorities to comply with the reasonable and valid regulation pre-existing the filing of his original application by filing a new application, giving the school authorities information as to his life and record since September, 1950, but refused to do so, such failure to pursue his administrative remedy would bar any relief to him by the courts. Particularly would the foregoing be true where his refusal to file a new application was persisted in up until the time of final trial in December, 1956 and a period of six and one-half years have elapsed during which plaintiff had had two years military service, had been absent from this state for a considerable period of time during which his whereabouts were unknown to defendants. A person qualified for admission in June, 1951 may conceivably not be qualified in September, 1957, and some accounting must be made for the intervening six years. A simple illustration should make this clear: If a child applied to enter kindergarten and was refused, and the matter was in litigation for five years, no one would seriously contend at the end of that time, even though he prevailed, that the authorities of the kindergarten should be required to admit him.

 (3) The foregoing principles of law requiring the plaintiff to pursue his

administrative remedies would also apply where, as here, plaintiff applied for admission and was rejected, and pending a final adjudication of the matter the defendant Board of Regents passed a resolution setting up certain requirements for admission, one of these requirements being that applicant should furnish additional information as to character. Whether or not other provisions of such resolution might, or might not, be invalid would not relieve plaintiff from the necessity of complying with said valid portion thereof, nor can such regulations be reviewed by this Court until he should have complied with the valid portions and shall have made his attack upon the remaining portions before the Board of Regents, and shall have been overruled therein.

■ (4) Regardless, however, as to whether or not this Court should dismiss the action upon the foregoing grounds, it seems clear to the Court that the cause of action as originally brought by the plaintiff became moot when the plaintiff in September, 1956 entered the Law School of Northwestern University, and on the trial in December, 1956 disclaimed any right to enter as a first year student pursuant to his application filed in September, 1950, and by amendment filed January 3, 1957 abandoned his rights under such original application and asserted rights only under a new application to be filed in the future as a transfer student, when and if he should have obtained advanced credits necessary to that end.

The Courts have uniformly stated that the jurisdiction of a United States District Court is limited and the burden rests upon all persons coming into court to show that the Court has jurisdiction.

"The right to judicial review in Federal Courts is limited by Article 3 of the Federal Constitution to cases and controversies. To constitute a controversy there must be involved an actual controversy between adverse litigants which may be decided by a judgment which may be carried into effect as distinguished from an attempt to secure an abstract decision upon certain questions or to declare rules of law which can not affect the matter in issue. The remedy of an injunction is preventive and looks only to the future. It can not be invoked for the purpose of punishment for wrongful acts already committed. Hygrade Food Products Corp. v. United States, 8 Cir., 160 F.2d 816; Woods, Housing Expediter vs. Malcolm-Dallyn Co., 8 Cir., 177 F.2d 414." Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co., 8 Cir., 181 F.2d 812, at page 814, and cases therein cited.

The plaintiff on the trial of the case did not swear that it was his intention to file with defendants an application as a transfer student in the future. On the trial of the case Dr. Danner, defendants' Registrar, testified that it was his practice to admit applicants to defendant Law School from accredited schools such as Northwestern University as transfer students with advanced credits, and there is no evidence in the record to indicate that defendants will refuse to admit plaintiff if he should in the future file an application as a transfer student after obtaining such advanced credits. The situation here is somewhat similar to that which faced the court in the case of National Lawyers Guild v. Brownell, 96 U.S.App.D.C. 252, 225 F.2d 552, in which it was contended that the Attorney General had pre-judged the matter in question, but affirmed his intention in the future to make an impartial determination.

"We cannot assume in advance of a hearing that a responsible executive official of the Government will fail to carry out his manifest duty. Our conclusion on the point is that the plaintiffs must await the event

rather than attempt to anticipate it." 225 F.2d at page 555.

Similarly in Robeson v. Dulles, 98 U.S. App.D.C. 313, 235 F.2d 810, the same court ruled that it would not assume the invalidity of a hearing which had not been held, or the illegality of questions which had not been asked, and the action brought by the plaintiff granting summary judgment to the defendant was affirmed.

Plaintiff's counsel insist that the decision in Whitmore v. Stilwell, 5 Cir., 227 F.2d 187 would change the above rule, but this Court does not agree for the facts in the instant case do not show the same close connection between the original application of the plaintiff and the proposed new application as appears in the case cited. Neither does the Court see any necessity for retaining jurisdiction over this case for an indefinite time in the future, nor does the plaintiff in his amendment filed January 3, 1957 ask for the same, but on the other hand expressly seeks a final decree at the present time concerning the proposed application which may be filed in the future.

Should the plaintiff file an application in the future and should it be denied, the plaintiff may again apply to the courts, but the Court should not now declare any discrimination even though it might have existed at or about September, 1950 for that would only be evidentiary upon the question as to whether discrimination might exist in the future should a transfer application be filed and be denied. That is to say, since plaintiff did not pursue his administrative remedies under his original application filed September, 1950 no determination of that application can be made, nor can it be the basis of a fragmentary ruling for purposes of using the same in a case which may possibly be brought in the future.

For reasons stated above the case will be dismissed.