247 F.2d 64
 101 U.S.App.D.C. 73
 ASSOCIATION OF LITHUANIAN WORKERS, Appellant,
v.
Herbert BROWNELL, Jr., Attorney General of the United
States, Appellee.
AMERICAN LITHUANIAN WORKERS LITERARY ASSOCIATION, Inc., Appellant,
v.
Herbert BROWNELL, Jr., Attorney General of the United
States, Appellee.
 Nos. 12975, 12976.
 United States Court of Appeals District of Columbia Circuit.
 Argued Dec. 3, 1956.
Decided May 9, 1957, Judgment Vacated Oct. 28, 1957, See 78
S.Ct. 93.
 
 Mr. Joseph Forer, Washington, D.C., with whom Mr. David Rein, Washington, D.C., was on the brief, for appellants.
 Mr. Edward H. Hickey, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub and Messrs. Oliver Gasch, U.S. Atty., and Paul A. Sweeney and Howard E. Shapiro, Attys., Dept. of Justice, were on the brief, for appellee.
 Messrs. Leo A. Rover, U.S. Atty., at the time record was filed, and Lewis Carroll, and Harold D. Rhynedance, Jr., Asst. U.S. Attys., also entered appearances for appellee.
 Before PRETTYMAN, WILBUR K. MILLER and DANAHER, Circuit Judges.
 WILBUR K. MILLER, Circuit Judge.
 
 
 1
 These appeals were heard together because they present practically identical questions. Due to slight factual differences, we shall discuss the cases separately.
 
 
 2
 No. 12,975. The Attorney General of the United States on April 29, 1953, notified the Association of Lithuanian Workers, which is chartered under New York law as a fraternal insurance company, that he proposed to designate it as an organization coming within the purview of Executive Orders 9835 and 10450.[1] The Association on May 8 gave notice of contest, and on July 8 the Attorney General sent it a statement of the grounds of the proposed designation and a set of interrogatories with respect thereto.[2] No reply to the statement and interrogatories was filed by the Association at any time. Instead, under date of September 8, 1953, it wrote to the Attorney General asserting its innocence, complaining that the interrogatories were impossible to answer, and attacking the hearing procedure as 'unfair and undemocratic and contrary to the laws and traditions of this Nation.' The Association did not ask that the interrogatories be modified or withdrawn, nor did it seek a conference or hearing concerning them. Having decided for itself that both the interrogatories and the prescribed hearing procedure were improper and unacceptable, the Association washed its hands of the whole matter and issued an ultimatum to the Attorney General in the closing paragraph of its letter, which we quote:
 
 
 3
 'In view of the foregoing, we respectfully request that you discontinue this proceeding against the Association. Should you persist in your avowed purpose to list it, the Association will have no alternative except to seek justice in the courts.'
 
 
 4
 After the 60-day period for reply had ended, the Association engaged counsel, who wrote the Attorney General demanding a due process hearing concerning the proposed designation. His letter did not tender a tardy reply signed and verified by the Association's executive officers, and did not itself amount to a formal reply. This was pointed out to counsel. He was also advised that the Association had not filed a reply within the period permitted therefor but in its letter of September 8 had rejected the administrative hearing which would have been available after reply and upon request. In January, 1954, the Attorney General designated the Association, holding that, under the rule, its failure to reply amounted to acquiescence.
 
 
 5
 Thereupon the Association filed this action in the United States District Court for the District of Columbia to enjoin the Attorney General from 'continuing the designation' and to require him to notify all federal departments and agencies, and the public, that the designation 'is withdrawn.' The complaint attacked the two Executive Orders as unconstitutional and pleaded the procedures and regulations thereunder are illegal and violative of due process. It charged the Attorney General had violated the Executive Orders by designating the Association without appropriate investigation and without notice and hearing.
 
 
 6
 The Attorney General answered. He outlined the information concerning the Association which his investigation had developed and upon the basis of which he had proposed the designation, and alleged the Association had failed to exhaust its administrative remedies and so was not entitled to judicial review. He then moved for summary judgment or in the alternative for judgment on the pleadings. The latter was granted by the District Court and this appeal followed.
 
 
 7
 We had before us in National Lawyers Guild v. Brownell, 1955,96 U.S.App.D.C. 252, 225 F.2d 552, certiorari denied 1956, 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457, a situation almost identical with that presented here.[3] The Guild was notified by the Attorney General that he proposed to designate it. It gave notice of contest, after which it received from the Attorney General a statement of grounds and interrogatories. Without replying thereto, the Guild sued in the United States District Court for judgment declaring Executive Orders 9835 and 10450 unconstitutional and void and the procedures adopted by the Attorney General under those Orders unconstitutional. It also attacked the interrogatories submitted to it. We held that the Executive Orders and procedures prescribed thereunder are valid; that a claim of constitutional invalidity does not negative the requirement for exhaustion of remedies and that the proper place to test the interrogatories in the first instance is before the administrative body. In short, we held the Guild must exhaust the proffered administrative remedy, and so affirmed the District Court's grant of summary judgment to the Attorney General. These holdings are dispositive of the present case unless, as it claims, the Association did not reject but rather was wrongfully denied the administrative remedy.
 
 
 8
 As we have seen, the appellant did not reply to or challenge the interrogatories before the administrative body, which would have entitled it to a hearing. Instead, it notified the Attorney General that he must withdraw the designation proceeding or be faced with litigation. This was clearly a refusal to utilize the administrative process, and precludes judicial review of the grounds for and the propriety of designation. In National Council of American-Soviet Friendship v. Brownell, 1957, 100 U.S.App.D.C. 116, 243 F.2d 222, 225, we rejected the appellants' insistence 'that they may default and still continue to litigate,' saying,
 
 
 9
 '* * * We find no support in the authorities for any such contention, indeed the cases are otherwise. The plight of the appellants is of their own choice and of their own making. We are satisfied that the principles underlying the exhaustion rule are clearly applicable here * * *.'
 
 
 10
 The Association says that 'even a rejection of the administrative remedy would not bar judicial determination after designation of whether the designation was made by an invalid procedure and whether the designation power is unconstitutional.' If it be assumed that when these questions are raised after designation the court should answer them despite failure to exhaust administrative remedies, the Association is no better off; for in the Lawyers Guild opinion we upheld the constitutionality of the Executive Orders and the validity of the procedures thereunder. We adhere to that holding.
 
 
 11
 No. 12,976. This case differs from the other in that, when the American Lithuanian Workers Literary Association received from the Attorney General a statement of grounds for designation with interrogatories, it seasonably filed what it termed a reply thereto which was signed and verified by its president and secretary.
 
 
 12
 The document merely says the Association is engaged in innocent activities and does not come within the purview of Executive Order 10450; that the alleged authority of the Attorney General thereunder and under his own regulations is neither expressly nor impliedly authorized by the Constitution and is violative of the First, Fifth, Ninth and Tenth Amendments. The reply concluded with this paragraph:
 
 
 13
 'Specifically, proper standards are not set forth in the Executive Order and in the regulations promulgated by the Attorney General; the so-called standards are vague, indefinite and without clear meaning, and the Regulations perpetuate the uncertainty. The proceedings should be dismissed.'
 
 
 14
 A hearing was not requested, even though the Association had purportedly replied. Its arguments for reversal are substantially the same as those we considered and rejected in the previous case.
 
 
 15
 The so-called reply was not a response to the Attorney General's statement of grounds and interrogatories, but a demand for dismissal on pleas of innocence and unconstitutionality. Having failed to reply, the Association cannot obtain judicial relief from designation.
 
 
 16
 The judgments are affirmed.
 
 
 17
 PRETTYMAN, Circuit Judge (concurring in part and dissenting in part).
 
 
 18
 In No. 12,976, American Lithuanian Workers Literary Association, Inc. v. Brownell, I concur in the result reached by the majority. The Literary Association failed to make to the Attorney General an objection to the proffered procedure with sufficient specificity to enable him to pass upon the challenge. It merely asserted that the whole proceeding was unconstitutional.
 
 
 19
 In No. 12,975, Association of Lithuanian Workers v. Brownell, I would reverse. I think the Workers were not proffered due process and they adequately tried to obtain valid consideration from the administrative agency.
 
 
 20
 1. The Regulations[1] provide that 'The reply (of an organization to a statement of charges and interrogatories) shall answer each interrogatory completely and with particularity and shall be limited to statements of fact.' They provide further[2] that 'Any organization filing a reply as provided in this part may accompany its reply with a written request for a hearing.' Thus the Regulations afford no opportunity for a hearing except upon the filing of a reply to each interrogatory completely and with particularity. I take it that 'completely and with particularity' means exactly what those words ordinarily mean.
 
 
 21
 2. Many of the interrogatories submitted to the Workers were impossible-- not merely difficult but impossible-- to answer completely and with particularity. Interrogatory (6) will serve as an example; others are like it. Included in the manifold intricacies of that inter-rogatory was:
 
 
 22
 '(a) List the names and addresses of all those persons who are presently members of the L.D.S. (the Workers).
 
 
 23
 '(b) Have any of the persons listed * * * at any time been
 
 
 24
 'iii. sympathetically associated with
 
 
 25
 '* * * any * * * group officially designated by the Attorney General pursuant to Executive Orders 10450 and 9835?
 
 
 26
 'iii. sympathetically associated 6(b) or any part thereof is in the affirmative, list the names and addresses of all such persons and indicate the periods during which they were
 
 
 27
 'iii. sympathetically associated * * *.'
 
 
 28
 There are some 7,000 members of the Workers, and there are some 250 organizations on the Attorney General's list. It was impossible for anyone to say under oath whether any of 7,000 members had ever at any time been sympathetically associated with any one of 250 organizations.
 
 
 29
 Perhaps another illustration will emphasize the point. Interrogatory (7) includes this inquiry:
 
 
 30
 '(a) List the names and addresses of persons who have, at any time, been * * * invited to speak or to appear as guests by the * * * various lodges (of the Workers) * * * or by * * * members of the * * * lodges * * * at any meetings * * * conducted * * * by * * * any of its * * * lodges or branches.
 
 
 31
 '(c) Have any of those persons listed * * * at any time been
 
 
 32
 'iii. sympathetically associated with
 
 
 33
 '* * * any * * * group officially designated by the Attorney General * * *?'
 
 
 34
 There are 167 lodges in the Association. Nobody, I venture to assert, could list all the persons invited to speak or to appear as guests at every meeting for twenty-three years of all of 167 lodges by any and all of 7,000 members.
 
 
 35
 A reading of all of the interrogatories as they appear in the record will demonstrate my point beyond peradventure of doubt. They were impossible to answer.
 
 
 36
 3. From the foregoing the conclusion is clear that the Workers were effectively and in fact denied opportunity for hearing. They were not proffered a hearing unless they answered every part of every interrogatory completely and with particularity. The proffer of a hearing was a nullity, being conditioned upon an absolute impossibility.
 
 
 37
 4. The Workers made due and timely response to the interrogatories. They wrote the Attorney General under date of September 8, 1953, which was within the allowed sixty days from July 13, 1953, the date of receipt of the statement and interrogatories, saying that the statement had been discussed at a meeting of the General Executive Board 'and we are writing you accordingly.' The letter was signed in the name of the Association by the president and the secretary. They said in part: 'Your rules and requirements make it impossible for the Association to have a hearing in regards to your proposed listing. For example, you would require the officers, under penalty of perjury, to furnish you with names and addresses of all of its members and to indicate with respect to each and every one, what his political beliefs, affiliations and 'sympathetic associations' are or ever were. This requirement is, as you must know, impossible to meet.' The Association said it had no records of any political affiliations of its members and that 'Therefore, it would be impossible for us to supply you with this information'.
 
 
 38
 Surely the foregoing was sufficient to put the Attorney General on notice that the Association had no means by which to answer his interrogatories and that they were impossible to answer. The Workers could not then ask for a hearing, because the Regulations specifically require that a 'reply as provided in this part' must be the basis for a request for a hearing. I think it cannot now be held that the Workers are wholly foreclosed because they did not request a hearing which under the Regulations they could not request.
 
 
 39
 On October 4, 1953, the Workers made a second response, written by counsel. He was quite specific in saying that 'aside from those numbered (1), (2) and (3), the Interrogatories are improper in that they are impossible to answer'. And he cited, by way of example, Interrogatories (5)(b) and (c), (6)(b) and (c), and (7)(c) and (d), saying: '* * * the Association does not have the information relating to political beliefs or affiliations called for by (those interrogatories).' Counsel continued by specifically stating that the Association desired a hearing 'but does not believe that such a hearing should be conditioned upon responses to Interrogatories (4) to (23), inclusive'.
 
 
 40
 5. In response to the charges forwarded to them, as distinguished from the interrogatories, the Workers' letter of September 8th made clear and careful response, categorically denying the purport of the involved charges and affirmatively asserting the activities to which the Association is 'confined strictly'.
 
 
 41
 6. I think the proffer of a hearing was null, that the Workers were not afforded due process, and that they effectively challenged to the administrative officer the validity of the proffered procedure. I would remand to the Attorney General with instructions either to revise the procedure so as to proffer effectively and actually an opportunity for hearing or to dismiss the charges.
 
 
 42
 7. I am in considerable doubt as to the validity of parts of the Regulations. For example, Section 41.3 provides:
 
 
 43
 'Failure to answer any interrogatory or any part thereof shall be deemed an admission of the truth of the facts to which such interrogatory or part thereof refers. The submission of an evasive reply to any interrogatory or any part thereof shall likewise be deemed an admission of the facts to which such interrogatory or part thereof refers.'
 
 
 44
 I would not know what 'facts' the questions about sympathetic association (as in Interrogatories (6) and (7) above discussed) 'refer' to. And the rule that an 'evasive reply' to any part of an interrogatory shall be deemed an admission of 'the facts' to which such part 'refers' is particularly objectionable. Other parts of the Regulations are of doubtful validity, in my view, but it is not necessary that I reach the question and so I do not.
 
 
 
 [1]
 Executive Order 10450, 3 C.F.R. 72 (Supp.1953), 5 U.S.C.A. 631 note, provides in pertinent part:
 'Sec. 12. * * * The Department of Justice shall continue to furnish the information described in paragraph 3 of Part III of the said Executive Order No. 9835, but directly to the head of each department and agency.'
 Paragraph 3 of Part III of Executive Order 9835, 3 C.F.R. 129, 131 (Supp.1947), 5 U.S.C.A. 631, note, provides:
 'The Loyalty Review Board shall currently be furnished by the Department of Justice the name of each foreign or domestic organization, association, movement, group or combination of persons which the Attorney General, after appropriate investigation and determination, designates as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or approving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of government of the United States by unconstitutional means.'
 
 
 [2]
 These steps were in accord with the rules (28 C.F.R. Part 41) governing procedure under Executive Order 10450, which further provide that within 60 days after the receipt of such statement and interrogatories, the organization may file a verified reply signed by its executive officers, rogether with a request for a hearing, which must be granted; that failure of the organization to file a reply within the 60-day period shall constitute an acquiescense in the designation
 
 
 [3]
 Cf. National Council of American-Soviet Friendship v. Brownell, 1957, 100 U.S.App.D.C. 116, 243 F.2d 222
 
 
 [1]
 18 Fed.Reg. 2620 (1953), 28 C.F.R. 41.3 (Supp.1955)
 
 
 [2]
 Id., 28 C.F.R. 41.4