Dr. Louis LEVY, Plaintiff–Appellant,

v.

Dr. Karl F. URBACH, Defendant–Appellee.

Steven DAVIS, Plaintiff–Appellant,

v.

John C. DROKE, Defendant–Appellee.

No. 78–2227.

United States Court of Appeals, Ninth Circuit.

Argued July 8, 1980.

Submitted July 23, 1980.

Decided Feb. 2, 1981.

Mark I. Schickman, San Francisco, Cal., for plaintiff–appellant.

Al J. Daniel, Jr., Alice Daniel, Dept. of Justice, Washington, D. C., for defendant–appellee.

Before ANDERSON and TANG, Circuit Judges, and CRAIG,* District Judge.

* The Honorable Walter E. Craig, Senior United States District Judge, District of Arizona, sitting by designation.

**J. BLAINE ANDERSON, Circuit Judge:**

The plaintiffs in these consolidated actions appeal the granting of summary judgment to the defendants in the *Davis* action, and the dismissal with prejudice of the complaint in the *Levy* action. Because we find that the defendants were not entitled to judgment as a matter of law, we affirm in part and reverse in part and remand for further proceedings.

## I. BACKGROUND

All of the plaintiffs claim entitlement to incentive pay for their work with victims of Hansen's Disease, more commonly known as "leprosy," while employed at the United States Public Health Service ("the Service") hospital located in San Francisco, California. Dr. Louis Levy, the named plaintiff in the *Levy* action, is a physician commissioned in the Service, assigned to and the Director of the Leprosy Clinic at the San Francisco hospital. Under 42 U.S.C. § 255, the Service must receive into any hospital suitable for accommodation of leprosy victims any person afflicted with the disease. Dr. Levy's complaint alleged that since at least January 1960, the San Francisco facility had been receiving and treating patients afflicted with leprosy. Filing both individually and on behalf of an alleged class consisting of all persons who have been employed at the San Francisco facility and have been exposed to intimate contact with leprosy patients during the course of their duties, Dr. Levy claimed that he and the class members were entitled to $110.00 per month beyond their normal compensation as hazardous duty pay under the Career Compensation Act, 37 U.S.C. § 301, *et seq.*, which provides *inter alia* for such payment to members of the uniformed services engaged *in duty* "involving intimate contact with persons afflicted with leprosy." 37 U.S.C. § 301(a)(7).

Dr. Levy later filed an amended complaint on behalf of noncommissioned officers at the San Francisco facility as a class,

claiming entitlement for them under a portion of the Public Health Service Act of 1944, 47 U.S.C. § 210(e), which provides for payment of additional compensation to non-commissioned officers of the Service for duty requiring intimate contact with leprosy patients. The amended complaint also added two more named plaintiffs, Dr. Michael Blumlein and Dr. Philip J. O'Keefe, both members of the Service assigned to the San Francisco facility. The *Levy* plaintiffs sought both a money judgment and a writ of mandamus directing payment of the judgment.

The plaintiffs in the *Davis* action, a group of commissioned officers in the Service serving at the San Francisco facility, also seek relief under 37 U.S.C. § 301. Jurisdiction in both the *Levy* and *Davis* actions was based upon 28 U.S.C. § 1346 because no individual claim was in excess of $10,000.00, and each was founded upon an act of Congress.[1]

The parties in *Davis* filed cross-motions for summary judgment, and the *Levy* plaintiffs filed a motion for class certification. Following a consolidated evidentiary hearing, the district court granted the defendants' motion for summary judgment in *Davis*, denied the class certification motion in *Levy*,[2] and dismissed the *Levy* complaint *sua sponte*. The district court's opinion appears at 447 F.Supp. 712.

The district court found that plaintiffs' claims under the Career Compensation Act were barred by Executive Order 11157, which implements the Act, and which defines the term "duty involving intimate contact with persons afflicted with leprosy" to mean duty performed by a member of the Service assigned to a "leprosarium" for a period of 30 days or more. The district court found that E.O. 11157 was not so palpably inconsistent with the Act as to nullify the Order. 447 F.Supp. at 716–717. The court further found, after hearing evidence on the issue, that the San Francisco facility was not a "leprosarium" within the meaning of the Order. With regard to the claim under 42 U.S.C. § 210(e), the court noted that the plaintiffs did not challenge the validity of its implementing regulation, 42 C.F.R. § 22.1, which conditions payment of additional compensation for work with leprosy patients for noncommissioned officers upon assignment to full–time duty for a period of 30 days or more to a station of the Service "devoted" to the care of leprosy patients. 447 F.Supp. at 719. The district court deferred to the Service's interpretation of the regulation, citing *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964), for the proposition that an agency's interpretation of its own regulation is entitled to great deference unless plainly erroneous or inconsistent with the regulation. The court also noted that, in view of its holding that commissioned officers were not entitled to incentive pay for work with leprosy patients under E.O. 11157, it would be anomalous to hold that noncommissioned Service officers and civil employees were entitled to such pay. 447 F.Supp. at 722. Only the issue of entitlement under the Career Compensation Act and E.O. 11157 is before us on this appeal.[3]

1. At oral argument, we raised the question whether the district court had jurisdiction under § 1346 over Dr. Levy's individual claim because it appeared that he might be claiming an amount in excess of $10,000. In his supplemental brief on the issue, however, Dr. Levy has represented that he does not assert a claim in excess of $10,000, and that he so waived any such claim in his First Amended Complaint. We therefore are satisfied that this appeal carries with it no latent jurisdictional defect.

2. The plaintiffs have not briefed on the question of the denial of certification. Accordingly, we do not purport to reach or comment on that question here. Even though the class of non-

commissioned officers is not before the court, the issue of entitlement under 42 U.S.C. § 210 apparently is still alive. Dr. O'Keefe, a named plaintiff in *Levy*, has claimed civil service status, and, consequently, entitlement under § 210. *See*, 447 F.Supp. at 719, n.13. We will not, however, rule upon § 210 for reasons stated at n.3, *infra*.

3. We pass only upon plaintiffs' claims under the Career Compensation Act, and do not rule on the district court's finding that the noncommissioned officers are not entitled to incentive pay under 42 U.S.C. § 210(e). We here invoke the rule that matters raised for the first time in an appellant's reply brief may not be con-

## II. DISCUSSION

It is important at the outset to lay out the precise language of the Career Compensation Act, and of the Executive Order implementing it. The plaintiffs' claim rests on the wording of 37 U.S.C. § 301(a)(7), which provides that:

"Subject to regulations prescribed by the President, a member of a uniformed service who is entitled to basic pay is also entitled to incentive pay, in the amount set forth in subsection (b) or (c) of this section, for the performance of hazardous duty required by orders. For the purposes of this subsection, 'hazardous duty' means duty—

* * * * * *

"(7) involving intimate contact with persons afflicted with leprosy. . . ."

The district court's denial of plaintiffs' claim rested upon § 109(a) of E.O. 11157, which provides that:

"The term 'duty involving intimate contact with persons afflicted with leprosy' shall be construed to mean duty performed by any member who is assigned by competent orders to a leprosarium for the performance of duty for a period of 30 days or more or for a period of instruction, whether or not such leprosarium is under the jurisdiction of one of the uniformed services."

On appeal, plaintiffs argue that E.O. 11157 is inconsistent with the Career Compensation Act to the extent that it predicates eligibility for leprosy incentive pay upon the place of duty, rather than the nature of the duty. Plaintiffs argue in the alternative that even if E.O. 11157 is a valid interpretation of the statute, the San Francisco facility qualifies as a "leprosarium." They also argue that the district court erroneously admitted certain evidence at the hearing which it had earlier ruled irrelevant. Because we agree with the plaintiffs' first contention, we do not reach their last two arguments.

The parties stipulated below to a lengthy statement of undisputed facts regarding the care of leprosy patients at the San Francisco facility. They agreed that a number of duties can constitute "intimate contact" with persons afflicted with leprosy, including, *inter alia*, physical contact, taking of nasal washings, taking of skin biopsies, and direct contact with a bodily specimen of a leprosy patient. The parties did not reach agreement on the issue of how contagious leprosy might be. While it is clear that at least some of the physicians and staff members assigned to the San Francisco facility perform the types of duties which have been stipulated to involve "intimate contact," it is also clear that the facility offers a wide spectrum of comprehensive medical care to patients afflicted with a wide variety of diseases, and the percentage of the average daily in–patient/out–patient population consisting of leprosy patients is very small. Nevertheless, the San Francisco hospital provides comprehensive leprosy care and treats approximately one–fifth of all leprosy patients in the United States.

In rejecting the plaintiff's contention that E.O. 11157 was an inappropriate implementation of the leprosy incentive pay pro-

sidered on appeal. *See, e. g., Mississippi River Corporation v. F. T. C.*, 454 F.2d 1083, 1093, 1094 (8th Cir. 1972). Even though both 42 U.S.C. § 210(e) and 42 C.F.R. § 22.1 are cited at p. 3 of the appellant's opening brief, no further argument on the provisions is attempted, appellants arguing exclusively under the Career Compensation Act and E.O. 11157. At p. 24 of the reply brief, appellants apparently attempt to incorporate all of the Career Compensation Act arguments into an attack upon the court's holding on § 210 and 42 C.F.R. § 22.1. This is too little too late, in our estimation. There are at least superficial differences between the two statutes, and we do not agree that arguments

pertaining to one may so glibly be transferred to the other. The plaintiffs did not question the validity of the regulation below, and could argue only the validity of the Service's interpretation here. In our view, the possibility that different considerations may control on that issue cautions against our guessing at what plaintiffs meant to argue. Their failure to present a coherent argument simply removes the point from our permissible range of inquiry. Accordingly, we express no opinion here whatsoever on the issues of the validity of 42 C.F.R. § 22.1, or the correctness of the Service's interpretation of the regulation as not covering the San Francisco facility.

visions of the Career Compensation Act, the district court relied upon our decision in *Ramirez v. I. N. S.*, 550 F.2d 560 (9th Cir. 1977). In *Ramirez*, we quoted the standard for measuring the validity of a regulation against the language of the statute which it purports to implement announced in *Boske v. Comingore*, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900). 550 F.2d at 564. According to *Boske*:

> "A regulation ... should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress."

177 U.S. at 470, 20 S.Ct. at 706. The district court found that the plaintiffs had failed to meet the high burden of proof imposed by *Boske* and *Ramirez*.

Here we deal not with a regulation promulgated by an agency, but with an Executive Order directly implementing a grant of authority under a statute. We must pause to inquire as a preliminary question whether a different standard is applicable. We conclude that for the purposes of this case, the "plainly and palpably inconsistent" standard of *Boske* is appropriate. We have located three cases dealing with potentially inconsistent Executive Orders. In *Day v. United States*, 611 F.2d 1122 (5th Cir. 1980), the court struck down a portion of E.O. 11157 which deemed any quarters provided rent free to Air Force officers "adequate" in the face of a statute which provided for a basic living allowance to officers whose quarters were not "appropriate to his grade, rank or rating and adequate for himself." 37 U.S.C. § 403(b). The *Day* court, applying the standard that all regulations must be "consistent" with the statutory authority which gives them validity, held that the order was inconsistent because it essentially mandated that no basic living allowance be provided, despite the clear language of the statute to the contrary. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C.Cir.1974), an Executive Order denying federal employees a statutorily-mandated pay raise was invalidated. On the other hand, in *Vergara v. Hampton*, 581 F.2d 1281 (7th Cir. 1978), *cert. denied*, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373, the court upheld an Executive Order barring lawfully admitted aliens from the federal civil service examination. *Cf. Mow Sun Wong v. Campbell*, 626 F.2d 739 (9th Cir. 1980). Consistency with the authorizing statute is as much a predicate for validity for an Executive Order as for an agency regulation.

In judging the consistency of E.O. 11157 with the Career Compensation Act, we are guided by a number of time-honored principles. A regulation is entitled to deference from this court if it has a reasonable basis in law, or unless it can be said not to be be a reasoned and supportable interpretation of the Act. *See, e. g., Whirlpool Corporation v. Marshall*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980); *Volkswagenwerk v. Federal Maritime Commission*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); *Cheung v. District Director, I. N. S.*, 630 F.2d 685 (9th Cir. 1980).

On the other hand, courts have long admonished the executive that a delegation of rule-making authority is not a delegation of the primary legislative function. As the Supreme Court held several decades ago:

> "The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity ... And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable." (citations omitted)

*Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936). *See also, e. g., United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Dixon v. United States,* 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Ellis v. United States,* 610 F.2d 760 (Ct.Cl.1979).

The Supreme Court has looked with particular disfavor upon regulations which in some sense add to or alter statutorily–defined criteria for eligibility for a particular benefit. In *United States v. Larionoff, supra,* the Court considered the claim of a serviceman that he was entitled to a variable re–enlistment bonus (VRB) because he had entered a training program shortly after basic training which would entitle him to VRB upon re–enlistment as a member of the armed forces having a "critical military skill." *See* 37 U.S.C. § 308(g). At the time he entered the program, he prospectively agreed to extend his enlistment. In between the time that the serviceman entered the program and his scheduled re–enlistment date, the Navy announced that his particular skill no longer qualified for a VRB. The serviceman re–enlisted as per his earlier agreement, but the Navy denied him his VRB on the basis of a regulation which stated that VRB eligibility was to be determined as of actual re–enlistment date. The Court held that the regulation, as applied, was invalid because it was contrary to the manifest purpose of Congress in enacting the VRB, which purpose the Court determined to be the providing of an incentive to re–enlist. Applying the *Manhattan General Equipment* standard, the Court ruled that the regulation was a nullity. In *United States v. Luskey,* 262 U.S. 62, 43 S.Ct. 493, 67 L.Ed. 864 (1923), the Court was asked to rule on a claim for hazardous duty pay under a statute which provided for such pay for officers "while lawfully detailed for duty involving actual flying in aircraft." Despite the plaintiff's assignment to such duty, the Navy refused to pay him except for time involving actual flight. The Court found that the language of the statute mandated payment for time assigned to such duty, and not merely for actual flying

time. In a similar vein, the Court in *United States v. Symonds,* 120 U.S. 46, 7 S.Ct. 411, 30 L.Ed. 557 (1887), struck down an order by the Secretary of the Navy that diminished an officer's "at sea" compensation.

■ Taking all of the foregoing as a whole, we see our task in the present case as a delicate one. While we must accord deference to the President's interpretation of the Career Compensation Act and overturn the Executive Order only if it is plainly inconsistent with the statute, we also cannot blind ourselves to any change which the Order might work in the operation of the statute so as to deny the plaintiffs any benefit to which they might otherwise be entitled.

■ We conclude that the district court erred in holding that § 109(a) of E.O. 11157 was not inconsistent with 37 U.S.C. § 301(a)(7). We agree with plaintiffs' contention that the Order impermissibly alters the eligibility criteria set forth in the Career Compensation Act by making entitlement dependent upon the *location* of duty, i. e., a "leprosarium," rather than the *nature* of duty. The language of the Career Compensation Act is mandatory and is without Congressionally–authorized limitations. It directs that any member of a uniformed service who is entitled to basic pay is also "entitled" to incentive pay for the performance of "hazardous duty." "Hazardous duty" is defined as duty "involving intimate contact with persons afflicted with leprosy." Thus, the plain language of the statute creates an entitlement based on the nature of the duty. E.O. 11157 § 109(a), however, adds a further requirement. That duty must be performed at a "leprosarium," a term which the Service has come to define as an institution devoted exclusively to the care and treatment of leprosy patients. Under decisions such as *Larionoff, supra,* we must regard the fashioning of an additional eligibility criteria by regulation as a fatal inconsistency with the Act. As the stipulated facts demonstrate, one can be assigned to duty involving "intimate contact" with lep-

rosy patients and yet not be assigned to a "leprosarium."[4] We do not read the phrase "[s]ubject to regulations prescribed by the President" to dictate a different result. That phrase merely grants the President the authority to prescribe regulations for the administration of the Career Compensation Act's provisions; it does not grant the authority to alter the plain meaning of the language and the Congressionally–prescribed eligibility definition.

The Service urges that the legislative history of the Act demonstrates that E.O. 11157 is consistent with the Act's purposes. The district court summarizes the Act's history, see 447 F.Supp. at 716, 717, and we will not repeat that summary here. We decline to attach much weight to the legislative history, however. The language of the statute is plain. While we do not exclude the legislative history from consideration altogether, we note the principle that the plainer the language of the statute, the more convincing the history of the statute must be to the contrary. *See Church of Scientology v. U. S. Dept. of Justice*, 612 F.2d 417, 422 (9th Cir. 1979). Even granting the Service's interpretation of the legislative history of the Act as yielding a rationale based primarily upon incentive, we do not agree that a limitation to duty at leprosaria is warranted. As the stipulated facts below showed, working with leprosy patients can be a disagreeable, if not hazardous line of work. The need for incentive pay can remain even though personnel are assigned to a facility where other types of patients are treated. The legislative history is not sufficiently compelling to command a different result here.

The Service also reminds us of the principle that an agency's long–standing interpretation of a statute which it is committed to enforce is entitled to great deference, especially where Congress has not disturbed the interpretation. *See, e. g., NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757,

40 L.Ed.2d 134 (1974). We do not disagree with this rule of construction, but find that it does not help the Service here. The Executive Order here fills in no gaps; rather, it adds to the eligibility criteria as set forth in the statute. As the Supreme Court noted in striking down a Treasury Regulation with which Congress had not indicated its disagreement in *Commissioner of Internal Revenue v. Acker*, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959), ". . . Congress could not add to or expand this statute by impliedly approving the regulation." The same holds true here.

In summary, we reverse the granting of summary judgment in *Davis v. Droke* because the defendants were not entitled to judgment as a matter of law. We order the complaint in *Levy v. Urbach* reinstated to the extent that it states a claim on behalf of the named plaintiffs under the Career Compensation Act of 1949. We do not reverse denial of summary judgment to the *Davis* plaintiffs because their individual claims must be adjudicated. We leave undisturbed the denial of class certification in *Levy*, and the ruling on entitlement under 42 C.F.R. § 22.1, because these issues have not been presented on appeal.

The judgment of the court below is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

---

4. At present, there are only two institutions in the United States. One is the National Leprosarium in Carville, La., the other apparently is located in Hawaii. By virtue of a consent decree in *Stricks v. Steinfield*, Civil No. 74–72 (D.D.C.1972), certain members of the staff of a Service hospital at Staten Island, New York, are also receiving leprosy pay, although, according to the briefs, it was not designated as a leprosarium.