**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Plaintiffs,**

v.

**Ronald REAGAN, et al., Defendants.**

**Civ. A. No. 86–1587.**

United States District Court, District of Columbia.

July 10, 1987.

Joe Goldberg, Rima Craddock, Amer. Fed. of Govt. Empls., Washington, D.C., for plaintiffs.

John Facciola, Asst. U.S. Atty., U.S. Attys. Office, Washington, D.C., for defendants.

MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The Court's memorandum opinion and order of September 23, 1986 denied plaintiffs' application for preliminary injunction herein, and granted defendants' motion to dismiss the complaint except as to the issue of the procedural validity of Executive Order No. 12,559. This case is now before the Court on cross-motions for summary judgment on the remaining issue. After careful consideration of the motions, opposition, reply, supporting memoranda and the entire record, the Court concludes that summary judgment should be entered in plaintiffs' favor.

BACKGROUND

The circumstances of this case are fully set forth in the Court's findings of fact issued September 23, 1986, and are incorporated by reference herein. In brief, this action concerns the President's implementation of his authority to exclude federal agencies or their subdivisions from the Federal Labor-Management Relations Act, 5 U.S.C. § 7101 et seq. ("FLMRA") in Executive Order No. 12,559. 51 F.Reg. 18,769 (May 20, 1986). Section 7103(b)(1) of the FLMRA grants this authority, to be exercised only if the President has determined that the excluded agency or subdivision has as a primary function intelligence, counter-intelligence, investigative, or national security work, and that the FLMRA cannot be applied to that agency consistently with national security. 5 U.S.C. § 7103(b)(1). President Carter was the first to exercise this power, in Executive Order No. 12,171 in 1979. Exec.Order No. 12,171, 44 F.Reg. 66,565, *reprinted in* 5 U.S.C. § 7103 app. (L.Ed.Supp.1987). Section 1–101 of Executive Order No. 12,171 set forth the Presi-

dent's determinations, tracking the language of Section 7103(b).

President Reagan issued Executive Order No. 12,559 on May 20, 1986, to amend Executive Order No. 12,171 by excluding additional agency subdivisions.[1] One such subdivision is the U.S. Marshals Enforcement Division, represented by plaintiffs herein. Executive Order No. 12,559 provides in relevant part:

> By the authority vested in me as President by the Constitution and statutes of the United States of America, including Section 7103(b) of Title 5 of the United States Code, and in order to exempt certain agencies or subdivisions thereof from coverage of the Federal Labor-Management Relations Program, it is hereby ordered as follows: Executive Order No. 12,171, as amended, is further amended by deleting Section 1–209 and inserting in its place [new Section 1–209].[2]

This Order does not, on its face, contain the determination required as a predicate to valid action under section 7103(b). The only issue before the Court is whether the absence of this determination invalidates the Executive Order.

## DISCUSSION

Under Fed.R.Civ.P. 56, the Court may enter summary judgment only when there are no material facts in dispute, and the movant demonstrates that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The facts of this case, so far as relevant to the remaining issue, are not disputed. The validity of the Executive Order is a question of law, and is thus properly before the Court for resolution. The Court raised this issue *sua sponte* at the hearing on the original motions, and heard argument from the parties at that time. The parties were given additional time to brief the issue, in order that their views could be thoroughly documented.

The memoranda submitted set forth the relative positions, but do little to mitigate the Court's concern over the propriety of this particular Executive Order. Review of what little authority exists impels the Court to conclude that Executive Order No. 12,559 is not a valid exercise of authority under section 7103(b), as it is not accompanied by any determination that the necessary preconditions exist.

### A. *Review of Executive Orders*

■ Unlike legislative or administrative action, few principles guide review of executive action. Without question, precedent has not drafted a blueprint for the review sought here. Justice Jackson commented over thirty years ago upon "the poverty of really useful and unambiguous authority applicable to concrete problems of executive power as they actually present themselves." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 592, 72 S.Ct. 863, 870–71, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). The field has not been enriched substantially, but certain broad principles have emerged. The Court's principal task, as Justice Jackson explained, is to measure the President's action against the authority under which it is taken. *Id.* at 635–38, 72 S.Ct. at 870–71. Thus, the Court must determine the source of authority for the action, and the action's compliance with any limitations that may accompany the authority. *Id. See also Panama Refining Co. v. Ryan*, 293 U.S. 388, 431–33, 55 S.Ct. 241, 253–54, 79 L.Ed. 446 (1935). As the Court found in its earlier ruling, the first step in the analysis is simplified here by President Reagan's express reliance on section 7103(b). Under *Panama Refining*, the validity of Executive Order 12,559 must be measured against the express conditions the statute sets forth. *Panama Refining*, 293 U.S. at 431, 55 S.Ct. at 253.

---

1. President Reagan had previously issued two Executive Orders that excluded additional agencies from the FLMRA. Executive Order No. 12,410, 48 F.Reg. 13,143 (March 28, 1983); Executive Order No. 12,338, 47 F.Reg. 1369 (January 11, 1982). Neither Order is challenged here.

2. Originally, section 1–209 excluded certain subdivisions within the Drug Enforcement Administration, Department of Justice. New section 1–209 adds offices and subdivisions within the United States Marshals Service.

Defendants assail the suggestion that this type of review is available. Initially, they contend that as *Panama Refining* addresses the constitutionality of a legislative delegation of power to the executive, 293 U.S. at 388, 55 S.Ct. 241, it neither requires nor supports review of this executive action, which was taken pursuant to an unchallenged legislative delegation. The Supreme Court's analysis in *Panama Refining*, however, addresses the validity of the President's action as well as the constitutionality of the delegation. The Court stated that even if the statute had properly accompanied the delegation with limiting conditions, "it would still be necessary for the President to comply with those conditions and to show that compliance as the ground of his [action]." *Panama Refining*, 293 U.S. at 431–32, 55 S.Ct. at 253. This result is the necessary adjunct to the delegation doctrine, and implicates similar separation of powers concerns. The statutory conditions are the *sine qua non* of a constitutional legislative delegation. If the President could act without any indication that the statutory preconditions to his power exist, the nexus of his action to a constitutional grant of authority would dissolve. *Id.*

The Court emphasizes that its concern is brought forth by the specific circumstances of this case. The President expressly attached his action to one constitutional foundation—the power lawfully delegated by Congress in § 7103(b). In distinction to *Youngstown Sheet & Tube*, which implicated the President's wartime powers, 343 U.S. 579, 72 S.Ct. 863, and to *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981), which involved issues of foreign relations, Executive Order No. 12,559 does not involve executive action in an arena otherwise committed to the President by the Constitution.[3] Thus,

while defendants correctly point to such cases as supportive of limited review, the purely statutory nature of the power the President exercised here brings this case squarely within the type of review envisioned in *Panama Refining*.

■ The Supreme Court has not specified the manner in which the President must demonstrate the validity of his action for purposes of this review. It did endorse a deferential general rule that "substantial compliance" would suffice, but cautioned that required findings could not be supplied wholly by implication. *Panama Refining*, 293 U.S. at 432–33, 55 S.Ct. at 253–54. Deference is further counselled by the presumption of regularity that accompanies executive action. The Court rejects defendants assertion that this presumption precludes review in this case. Rather, the presumption would require the Court to accept a statement by the President that the necessary conditions existed, absent clear evidence to the contrary. *Accord United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) (absent such clear evidence courts presume executive officials have properly discharged their duties). *See also Dames & Moore*, 453 U.S. at 668, 101 S.Ct. at 2981 (noting the "heavy burden" that accompanies a challenge to Presidential action taken pursuant to statute). The facts could not be probed, and the record of decision would not be examined. Thus, it would appear that a bare statement in the Executive Order tracking the language of the statutory conditions would show the President's "substantial compliance" with the limitations placed on his power. *Accord National Treasury Employees Union v. Reagan*, C.A. No. 80–606, slip op. at 2 (reviewing President Carter's Executive Order No. 12,171, issued under

---

3. The only aspect of the section 7103 power that enters an arguably similar area reserved to the executive is the evaluation of the agencies' "national security" role. As Judge Parker noted in *National Treasury Employees Union v. Reagan*, C.A. No. 80–606, slip op. at 2 (D.D.C. Sept. 3, 1981), national security concerns are traditionally within the Chief Executive's bailiwick. In the review at issue here, however, the Court

asks only whether the President has brought into play his expertise in national securities issues. Further review of any findings would be barred. The level of scrutiny given Executive Order No. 12,559 is appropriate as no second constitutional power is implicated, and as deference would be granted any "national security" findings actually made.

§ 7103(b)). The Executive Order at issue here does not contain such a statement, and unless another source sustains its validity, it must be declared invalid.

### B. *Validity of Executive Order No. 12,-559*

■ Executive Order No. 12,559 is not the first executive effort to exercise power under § 7103(b); it was issued to amend a valid, preexisting Executive Order that contained the necessary determinations. Exactly what effect this has upon the Court's review is admittedly not addressed in prior cases, and there are no established principles of interpretation for Executive Orders, beyond the general guidelines for review discussed above. The parties contend that ordinary principles of statutory interpretation apply. Defendants then conclude that the Court should therefore view Executive Order No. 12,559 and Executive Order No. 12,171 as a whole to determine whether the President validly employed § 7103(b).

Essential differences between executive and legislative action prevent the Court from applying, without question, principles of statutory interpretation to Executive Orders. Executive Orders have no public record behind them—there is no legislative history to which the Court may resort to discern the meaning of language, or the intent of the drafter. This lack of record and lessened scrutiny is in keeping with the distance between the executive and judicial branch. As a result, however, a canon of legislative construction that relies upon the existence and examination of a "public record" could not be extended rationally to interpretation of Executive Orders. Absent a "history" to place a given Executive Order in context, each Executive Order appears to stand on its own as an independent exercise of executive power.[4] Further, in this case, the Executive Order did not issue in conjunction with the exercise of power constitutionally committed to the President. *Cf. Dames & Moore*, 453 U.S. at 654, 101 S.Ct. at 2973 (power to conduct foreign

relations). The authority for the Order thus must be found on its face. Although President Reagan stated he was "amending" a pre-existing Executive Order, his amendment seeks to exclude certain agency subdivisions from the FLMRA. His power to exclude only arises if he finds certain conditions to exist. While the conditions were found to exist in 1979 as to the entities excluded by President Carter, that does not mean they existed in 1986 as to the entities listed in Executive Order No. 12,559. President Reagan did not incorporate the earlier determinations by reference, and *Panama Refining* precludes the Court from implying existence of essential conditions without some language in the Order itself. Thus, the absence of determinations or findings in the Order, the lack of any language incorporating and republishing prior findings and determinations, and the absence of a separate source of executive power sufficient to sustain the action, lead the Court to conclude that Executive Order No. 12,559 is not a valid exercise of power under § 7103(b).

### CONCLUSION

The Court does not seek to probe the Executive's decision-making process; nor does it seek to question the statutory conditions Congress placed in § 7103(b). Rather, the Court has reviewed the President's action to determine whether it complied with the conditions Congress established. The formalism of the result is dictated by the terms of the statute and by the limited nature of judicial review of executive action. When power is exercised through words, those words must be examined to assess the propriety of the exercise. A more probing review would intrude upon the executive branch to an unwarranted degree; a more limited review would cause the Court to shirk its role in preserving separation of powers under the Constitution. It is a narrow line to walk, but can-

---

**4.** Also in distinction from legislation, Executive Orders and the Executive Orders that amend them are published separately when officially reported. *See e.g.,* Exec.Order No. 12,559, 51 Fed.Reg. 18,761. There is no updated, amended Executive Order published. While not conclusive, this illustrates the individual nature of this vehicle of executive action.

not for its specificity be dismissed as semantics or formalistic niceties.

Based upon the foregoing analysis, the Court concludes that Executive Order No. 12,559 was not a valid exercise of authority under 5 U.S.C. § 7103(b), and is therefore void. An appropriate order accompanies this opinion.

### ORDER

Upon consideration of the pending motions, supporting memoranda and the entire record, and for the reasons set forth in the accompanying opinion, it is this 9th day of July, 1987,

ORDERED that defendants' motion for summary judgment is denied, plaintiffs' motion for summary judgment is granted. Executive Order No. 12,559 is declared invalid, and this action is dismissed in its entirety.