870 F.2d 723
 130 L.R.R.M. (BNA) 3031, 276 U.S.App.D.C. 309
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,
International Council of U.S. Marshals Service
Locals, 210, et al.
v.
Ronald REAGAN, President of the United States, et al., Appellants.
 No. 87-5335.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 8, 1988.
Decided March 24, 1989.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 86-01587).
 Randy L. Levine, Associate Deputy Atty. Gen., with whom John R. Bolton, Asst. Atty. Gen., Richard K. Willard, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Washington, D.C., Joseph E. diGenova, U.S. Atty., Chevy Chase, Md., Douglas N. Letter and Jay S. Bybee, Attys., Dept. of Justice, Washington, D.C., were on the briefs, for appellants. John Facciola and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellants.
 Joe Goldberg, with whom Mark D. Roth and Charles A. Hobbie, Washington, D.C., were on the brief, for appellees.
 Before WALD, Chief Judge, and ROBINSON and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 This appeal summons us to decide whether a presidential executive order purportedly exerting a statutorily-conferred power is legally ineffective because it does not show facially and affirmatively that the President made the determinations upon which exercise of the power is conditioned. We hold that the challenged order is entitled to a rebuttable presumption of regularity, and on the record before us we sustain it.
 
 
 2
 * Since 1962, collective bargaining has been available to most federal employees.[1] In 1978, Congress enacted the Federal Service Labor-Management Relations Act,[2] the first legislation comprehensively governing labor relations between federal managers and employees. Congress did not, however, include the entire federal workforce within this regime. The Act itself exempted several federal agencies from coverage;[3] additionally, Section 7103(b)(1) authorized the President, under specified conditions, to make further exceptions:
 
 
 3
 The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that--
 
 
 4
 (A) The agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and
 
 
 5
 (B) The provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.[4]
 
 
 6
 In 1979, President Carter issued Executive Order 12171[5] which, after paraphrasing Section 7103(b)(1), eliminated a number of agencies and subdivisions from coverage. In 1986, President Reagan promulgated Executive Order 12559, which undertook to amend the 1979 order to exclude certain subdivisions of the United States Marshals Service.[6] Appellees then instituted an action in the District Court attacking the legality of the latter order. The court rejected their claim that federal marshals are not engaged in protection of the national security, and consequently that the order was invalid on this account, ruling instead that judicial authority to reassess the facts underlying the order was lacking.[7] The court concluded, however, that it retained "general power to ensure that the authority was correctly invoked,"[8] and that this necessitated measurement of the order by the conditions specified in Section 7103(b)(1).[9] The court held that inclusion in the order of the President's determinations was a condition precedent to lawful exercise of the power;[10] only in this way, the court felt, could it be demonstrated that the circumstances contemplated by the Act existed.[11] The court further held that Executive Order 12559 was not saved merely by the fact that it sought only to amend the 1979 order, which did contain the recitations thought necessary.[12] Accordingly, the court granted summary judgment in favor of appellees,[13] and appellants came here.
 
 II
 
 7
 We first must address appellants' contention that the case is moot. In 1988, after the District Court ruled, the President issued Executive Order 12632, which provides for the same exclusions that Executive Order 12559 does, and contains all that the court deemed essential.[14] Since the 1988 order conforms fully to the court's standard, the question arises whether a controversy still exists. Appellants, while maintaining that the 1986 order remains valid, assert that the 1988 order fully resolves the dispute over validity of the 1986 order, and urge us to vacate the District Court's judgment and dismiss the appeal.[15]
 
 
 8
 Important collateral consequences flowing from the 1986 order lead us to the conclusion that the controversy remains very much alive. Since issuance of the 1986 order, the Marshals Service has unilaterally abrogated the collective bargaining agreement as to affected deputy marshals, thereby depriving them of grievance procedures and other benefits, and has terminated checkoff of union dues, to the serious financial detriment of the union.[16] On this account, appellees have filed unfair labor practice charges with the Federal Labor Relations Authority,[17] which is holding the charges in abeyance pending the outcome of this appeal.[18] Resolution of the charges depends upon the validity of the 1986 order--the precise question now before us.
 
 
 9
 In these circumstances, it cannot be said that the 1988 order has "completely and irrevocably eradicated the effects of the alleged violation"[19]--the annulment of Executive Order 12559.[20] We accordingly put the suggestion of mootness aside and turn to the merits.
 
 III
 
 10
 Appellants argue that the District Court improperly imposed upon the President a requirement not supported by the Act.[21] They insist that a presumption of regularity surrounded the promulgation of Executive Order 12559, and thus that there was no need to explicate findings by the President.[22] Appellants also claim that any infirmity in the order is rendered immaterial by the fact that it simply amended the 1979 order, which incorporated findings of the sort believed to be necessary.[23]
 
 
 11
 Appellees contend that the 1986 order did not comply with the Act.[24] They insist that Congress designed the findings as preconditions to the President's resort to the exemption authority; that the courts are the instrumentalities for ensuring that the authority is properly exercised; and that the courts must see some proof that these prerequisites were satisfied.[25] Appellees point to other cases in which courts have invalidated executive action that did not satisfy statutory demands.[26]
 
 
 12
 Section 7103(b)(1) makes clear that the President may exclude an agency from the Act's coverage whenever he "determines" that the conditions statutorily specified exist.[27] That section does not expressly call upon the President to insert written findings into an exempting order, or indeed to utilize any particular format for such an order. The District Court, by mandating a presidential demonstration of compliance with the section, engrafted just such a demand onto the statute.
 
 
 13
 We deem the familiar presumption of regularity decisive here. It "supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."[28] This presumption has been recognized since the early days of the Republic. In the summer of 1812, President Madison exercised a statutorily-conferred power to call forth state militiamen "whenever the United States shall be invaded, or be in imminent danger of invasion from any foreign nation or Indian tribe."[29] In Martin v. Mott,[30] a militiaman objected on the ground that the order did not show facially that the President had determined that there was an imminent danger of invasion.[31] The Supreme Court responded:
 
 
 14
 It is the opinion of the Court, that this objection cannot be maintained. When the President exercises an authority confided to him by law, the presumption is that it is exercised in pursuance of law. Every public official is presumed to act in obedience to his duty, until the contrary is shown; and a fortiori this presumption ought to be favourably applied to the chief magistrate of the Union. It is not necessary to aver, that the act which he may rightfully do, was so done.[32]
 
 
 15
 Over the many years since Martin v. Mott, the presumption of regularity has been applied in a variety of contexts,[33] and it is clearly applicable to the case at bar. The executive order under review cited accurately the statutory source of authority therefor, and purported to amend an earlier order that indubitably was a proper exercise of that authority. The Act does not itself require or even suggest that any finding be reproduced in the order. No more than the District Court have appellants suggested any actual irregularity in the President's factfinding process or activity. In these circumstances, we encounter no difficulty in presuming executive regularity. We cannot allow a breach of the presumption of regularity by an unwarranted assumption that the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them.
 
 
 16
 In ruling to the contrary, the District Court relied heavily upon the prevailing opinion of the Supreme Court in Panama Refining Co. v. Ryan.[34] There the Court, focusing on what it regarded as an excessive statutory delegation of legislative power to the President,[35] set for naught an executive order issued pursuant to the National Industrial Recovery Act by striking down the authorizing provision of the statute.[36] The Court held in the alternative that even if the statute was valid, the order would still be ineffective because it did not set forth express findings on the existence of conditions prerequisite to exercise of the authority conferred.[37] The Court observed that
 
 
 17
 [t]o hold that [the President] is free to select as he chooses from the many and various objects generally described in the [relevant] section, and then to act without making any finding with respect to any object that he does select, and the circumstances properly related to that object, would be in effect to make the conditions inoperative and to invest him with an uncontrolled legislative power.[38]
 
 
 18
 Just what situations this declaration encompasses may to many remain quite obscure. That one situation, however, is beyond its ken is crystal clear. The majority opinion cautioned that the Court was "not dealing with ... the presumption attaching to executive action.... [W]e are concerned with the question of the delegation of legislative power."[39] The Court cited approvingly several cases, including importantly Martin v. Mott, in which the presumption of regularity was applied.[40] Our proper course, then, is evident; we are to abide the Court's admonition that what Panama Refining does is inapplicable here, and that, as in Martin v. Mott, the presumption of regularity is pivotal. Indeed, the Supreme Court has never given Panama Refining the interpretation it received in the District Court, nor, so far as we can ascertain, has any other court.
 
 
 19
 We hold that Executive Order 12559 is effective, and has been from the date of its promulgation. The judgment of the District Court is accordingly reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 20
 So ordered.
 
 
 
 [1]
 See Exec.Order No. 10,988, 3 C.F.R. 521 (1959-1963)
 
 
 [2]
 Pub.L. No. 95-454, tit. VII, 92 Stat. 1111, 1191-1218 (1978) (codified at 5 U.S.C. Secs. 7101 et seq. (1982 & Supp. IV 1986))
 
 
 [3]
 See 5 U.S.C. Sec. 7103(a)(3) (1982)
 
 
 [4]
 Id. Sec. 7103(b)(1)
 
 
 [5]
 3 C.F.R. 458 (1979)
 
 
 [6]
 In relevant part, Exec. Order No. 12,559 provides:
 By the authority vested in me as President by the Constitution and statutes of the United States of America, including Section 7103(b) of Title V of the United States Code, and in order to exempt certain agencies or subdivisions thereof from coverage of the Federal Labor-Management Relations Program, it is hereby ordered as follows: Executive Order No. 12171, as amended, is further amended by deleting Section 1-209 and inserting in its place:
 Section 1-209. Agencies or Subdivisions of the Department of Justice:
 * * *
 b. The Office of Special Operations, the Threat Analysis Group, the Enforcement Operations Division, the Witness Security Division and the Court Security Division in the Office of the Director and the Enforcement Division in offices of the United States Marshals in the United States Marshals Service.
 
 
 [3]
 C.F.R. 217 (1986) (footnote omitted)
 
 
 [7]
 AFGE v. Reagan, Civ. No. 86-1587 (D.D.C. Sept. 23, 1986) (opinion on preliminary-injunction and dismissal motions) at 5-7, Joint Appendix (J.App.) 22-24 [hereinafter First Opinion ]. This contention is not before us on this appeal
 
 
 [8]
 Id. at 7, J.App. 24
 
 
 [9]
 AFGE v. Reagan, 665 F.Supp. 31, 32 (D.D.C.1987) (opinion on summary-judgment motions), J.App. 32 [hereinafter Second Opinion ]
 
 
 [10]
 First Opinion, supra note 7, at 7. J.App. 23
 
 
 [11]
 Id. at 8, J.App. 25; Second Opinion, supra note 9, at 33-34, J.App. 32-35
 
 
 [12]
 Second Opinion, supra note 9, at 34, J.App. 35-37
 
 
 [13]
 AFGE v. Reagan, 665 F.Supp. 31, 34 (D.D.C.1987) (order), J.App. 39
 
 
 [14]
 Exec.Order No. 12,632, 53 Fed.Reg. 9852 (1988)
 
 
 [15]
 Defendants-Appellants' Suggestion of Mootness, AFGE v. Reagan, No. 87-5335 (D.C.Cir.) (filed Mar. 28, 1988) at 2-5
 
 
 [16]
 Plaintiffs-Appellees' Response to Suggestion of Mootness, AFGE v. Reagan, No. 87-5335 (D.C.Cir.) (filed Apr. 4, 1988) at 3-5
 
 
 [17]
 Id. at 4
 
 
 [18]
 Letter from S. Jesse Reuben to Wallace Roney and Tom Mulhern (Nov. 30, 1987), Attachment C to Appellees' Response to Suggestion, supra note 16, at 2
 
 
 [19]
 County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1384, 59 L.Ed.2d 642, 649 (1979)
 
 
 [20]
 Id. The Government urges us to dispose of all collateral consequences by treating the 1988 order as a "curative act" and extending its vitality as such back to the date of the 1986 order. Appelants' suggestion of mootness, supra note 15, at 4-5. It suffices to point out that curative governmental action is not to be given such retroactivity as to demolish intervening vested rights--here those asserted by appellees with a view to remediation. See, e.g., Hodges v. Snyder, 261 U.S. 600, 603-604, 43 S.Ct. 435, 436, 67 L.Ed. 819, 822 (1923) (subsequent act may not deprive a person of a private right established under a previous law); Forbes Pioneer Boat Line v. Board of Comm'rs, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1921) (legislation may not retroactively abolish vested rights); DeRodulfa v. United States, 149 U.S.App.D.C. 154, 171, 461 F.2d 1240, 1257 (1972) ("a vested cause of action, whether emanating from contract or common law principles, may constitute property beyond the power of the legislature to take away" (footnote omitted))
 
 
 [21]
 Brief for Appellants at 9, 13
 
 
 [22]
 Id. at 11
 
 
 [23]
 Id. at 16-19, 22-26
 
 
 [24]
 Brief for Appellees at 13
 
 
 [25]
 Id. at 13-15
 
 
 [26]
 Id. at 15-17, citing National Fed'n of Fed. Employees Local 1622 v. Brown, 207 U.S.App.D.C. 92, 645 F.2d 1017, cert. denied, 454 U.S. 820, 102 S.Ct. 103, 70 L.Ed.2d 92 (1981); NTEU v. Nixon, 160 U.S.App.D.C. 321, 492 F.2d 587 (1974); Levy v. Urbach, 651 F.2d 1278, 1282 (9th Cir.1981). In National Federation, this court invalidated an attempt by the President to define the "public interest," with respect to the pay of certain federal workers, "without reliance on the explicit standards" set by Congress. 207 U.S.App.D.C. at 100, 645 F.2d at 1017. In NTEU, this court issued a declaratory judgment that the President's failure to perform an express, statutory and non-discretionary duty violated his constitutional obligation to faithfully execute the laws. 160 U.S.App.D.C. at 326-336, 350, 492 F.2d at 592-603, 616. In Levy, the Ninth Circuit held that an executive order had to comport with the authorizing statute to be valid. 651 F.2d at 1282. Appellants do not take issue with these unexceptional holdings, and we merely observe that they lend no assistance in solving the problem confronting us
 
 
 [27]
 See text supra at note 4
 
 
 [28]
 United States v. Chemical Found., 272 U.S. 1, 14-15, 47 S.Ct. 1, 6, 71 L.Ed. 131, 142-143 (1926)
 
 
 [29]
 Act of Feb. 28, 1795, 1 Stat. 424
 
 
 [30]
 25 U.S. (12 Wheat.) 19, 6 L.Ed. 537 (1827)
 
 
 [31]
 Id. at 32, 6 L.Ed. at 541
 
 
 [32]
 Id. 32-33, 6 L.Ed. at 541
 
 
 [33]
 The cases doing so are legion. The following are typical: INS v. Miranda, 459 U.S. 14, 18, 103 S.Ct. 281, 283, 74 L.Ed.2d 12, 16-17 (1982) (specific evidence is required to overcome presumption that public officers have executed their responsibilities properly); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971) (where statute prohibited approval by Secretary of Transportation of federal financing for construction of roadways through parks unless there was no feasible and prudent alternative route, and Secretary approved financing for such a project without making formal findings, Secretary's decisionmaking process was entitled to presumption of regularity); Michigan v. Doran, 439 U.S. 282, 290, 99 S.Ct. 530, 536, 58 L.Ed.2d 521, 528 (1978) (in extradition hearing, presumption of regularity insulates demanding state's probable cause determination from review in asylum state); Philadelphia & T. Ry. v. Stimpson, 39 U.S. (14 Pet.) 448, 458, 10 L.Ed. 535, 541 (1840) (where statute required certain conditions to be met before corrected patent could issue, signatures of President and Secretary of State on corrected patent raised presumption that all requisite conditions were satisfied, despite absence of recitals so indicating on face of patent); Udall v. Washington, Va., & Md. Coach Co., 130 U.S.App.D.C. 171, 175, 398 F.2d 765, 769, cert. denied, 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed.2d 531 (1968) (Secretary of Interior's determination that limitation of commercial bus service on portion of George Washington Parkway was required to preserve area's natural scenic beauty was entitled to presumption of validity, and burden was upon challenger to overcome it); National Lawyers Guild v. Brownell, 96 U.S.App.D.C. 252, 255, 225 F.2d 552, 555 (1955), cert. denied, 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956) ("[w]e cannot assume in advance of a hearing that a responsible executive official of the Government will fail to carry out his manifest duty" by reaching a final decision on a matter before complete record required by law was compiled)
 
 
 [34]
 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935)
 
 
 [35]
 Id. at 414-430, 55 S.Ct. at 246-253, 79 L.Ed. at 456-464
 
 
 [36]
 Id. at 430, 55 S.Ct. at 252-253, 79 L.Ed. at 464
 
 
 [37]
 Id. at 431, 55 S.Ct. at 253, 79 L.Ed. at 464-465
 
 
 [38]
 Id. at 431-432, 55 S.Ct. at 253, 79 L.Ed. at 464-465
 
 
 [39]
 Id. 293 U.S. at 432, 55 S.Ct. at 253, 79 L.Ed. at 465
 
 
 [40]
 Id. 293 U.S. at 432 n. 15, 55 S.Ct. at 253 n. 15, 79 L.Ed. at 465 n. 15